IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-00066-FL

| | |
|---|---|
| JOE ANN BELL, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, -18] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Joe Ann Bell ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on July 25, 2012, alleging disability beginning July 10, 2012. (R. 16, 156-63). Her claim was denied initially and upon reconsideration. (R. 16, 47-101). A hearing before the Administrative Law Judge ("ALJ") was held on May 27, 2014, at which Claimant, represented by counsel, and a vocational expert

("VE") appeared and testified. (R. 15, 29-46). On June 20, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 13-28). On February 24, 2015, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ improperly evaluated Claimant's residual functional capacity ("RFC") and credibility. Pl.'s Mem. [DE-17-1] at 7-11.

3

## IV. FACTUAL HISTORY

### A.     ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: obesity, osteoarthritis of joints, positive rheumatoid factor and complaints in the feet and hands, and colitis. *Id.* The ALJ also determined Claimant had the nonsevere impairment of anemia. (R. 18-19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform light[1] work with the following limitations: access to a bathroom facility within five minutes of her work station; the ability to change posture every 45 minutes to one hour; frequently grasp and handle with her hands; occasionally do overhead work; avoid kneeling, squatting, crawling, or working around unprotected heights; and avoid exposure to dangerous machinery to herself or others. (R. 19-22). In making this assessment, the ALJ found Claimant's statements about her limitations not credible. *Id.* At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

(R. 22-23). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23-24).

## B. Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was 51 years old. (R. 34). She last worked in July 2012 at a concession stand, but could not stand because of swelling and pain in her feet. *Id.* Claimant's past work required constant standing and use of her hands. *Id.* She also worked previously as a bartender, until losing the use of her right hand, and as a sewing machine operator making 18-wheel truck covers, which required heavy lifting up to 100 pounds or more. (R. 34-35).

Claimant experiences pain and stiffness in the fingers on her right hand and up to her shoulder to the point that she cannot move and has to apply heat and lie down. (R. 36). Claimant vacuums some days because she was told to keep moving her hand through exercise to minimize stiffness, but she only has two or three days a week when she can use her hand and the following day she will not be able to use it. (R. 36-37). She sometimes has difficulty grasping and has dropped things due to pain in her hand. (R. 37). Claimant also experiences pain and swelling in her feet and toes, which feels like pins and needles when she walks, and she has to walk on the back of her heels. (R. 36). At times Claimant has difficulty walking due to the pain in her feet. (R. 38). Claimant takes medication that helps relieve her pain but experiences weight gain as a side effect. (R. 37). In addition to medication, Claimant tries to walk to relieve her pain. (R. 39-40). Claimant could not quantify how often she is in pain, but explained it just comes on her and that two to three mornings a week she is in so much pain that she cannot get out of bed. (R. 39). Claimant has colitis, which

5

causes abdominal pain and bleeding with bowel movements, and some mornings she has a bowel movement before she can get to the bathroom. (R. 40).

Claimant lives with her mother and son, but when Claimant is having difficulties her daughter does the housework and cooking. (R. 38). Claimant sometimes helps cook, clean, and do laundry. (R. 38-39). She estimated being able to stand comfortably for two to three hours before needing a break, but spends most of the day seated with her feet elevated for three or four hours to alleviate swelling. (R. 37-38). Claimant believes she could lift five to ten pounds before her hand would give out. (R. 40). Claimant cannot stay in the grocery store for long because the cold temperature exacerbates her pain. (R. 40-41). She sometimes has pain in her lower back when sitting and she lies down with a pillow behind her back for relief. (R. 41). She had difficulty with the ride to the hearing and had to remove her shoes due to swelling in her feet. *Id.*

## C.    Vocational Expert's Testimony at the Administrative Hearing

Dr. Ann Neulicht testified as a VE at the administrative hearing. (R. 42-46). After classifying Claimant's past work experience, the ALJ asked the VE to assume a hypothetical individual of the same age, education, and prior work experience as Claimant with the ability to perform light work with the following limitations: access to a bathroom facility within five minutes; no unprotected heights or exposure to dangerous machinery (to herself or others); change posture every 45 minutes to one hour as a stretch break; frequent grasping and handling; and occasional overhead work, kneeling, squatting, or crawling. (R. 42-43). The VE indicated the hypothetical individual could not perform Claimant's past work, but could perform the jobs of office helper, Dictionary of Occupational Titles ("DOT") code 239.567-010, light exertion, unskilled, with an SVP of 2, and the VE clarified that office work allows for periodic bathroom breaks; parking lot attendant,

6

DOT code 915.473-010, light exertion, unskilled, with an SVP of 2; and mail clerk, DOT code 209.687-026, light exertion, unskilled, with an SVP of 2. (R. 44-45). Claimant's counsel inquired as to whether the additional limitation of elevating the feet for at least four hours a day would preclude the cited jobs, and the VE responded affirmatively and also suggested that it would likely preclude substantial gainful activity. (R. 45).

# V. DISCUSSION

## A. The ALJ's RFC and Credibility Determinations

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of

7

whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Claimant contends that the ALJ erred in evaluating her credibility and in determining that she has the RFC to perform light work with limitations, specifically that (1) the finding that Claimant is capable of frequent grasping and handling is not supported by substantial evidence, (2) the finding

8

that positive rheumatoid factor is a severe impairment is inconsistent with the RFC, and (3) Claimant's testimony regarding pain and functional limitations with her right hand and feet is consistent with the medical evidence. Pl.'s Mem. [DE-17-1] at 7-11. Defendant responds that the ALJ's RFC and credibility determinations are supported by substantial evidence. Def.'s Mem. [DE-19] at 6-13.

The ALJ's RFC determination consisted of summarizing Claimant's treatment records related to her colitis and osteoarthritis (R. 21-22), discussing the opinion evidence of record (R. 22), and assessing Claimant's credibility, finding her statements concerning the intensity, persistence, and limiting effects of her symptoms to be not credible, *id.* The ALJ analyzed Claimant's credibility as follows:

> At the hearing, she testified that she was able to cook and clean, vacuum, sit for most of the day, and only had pain two to three days a week. In September 2012, the claimant told Mr. Wright in the emergency room that she had been treated with steroid injections in 2011 for joint pains in her hands, feet and knees, that had helped improve her symptoms (Exhibit 11F). In October 2012, she told Dr. Kumar that she could feed, dress and undress herself; sit with no problem, stand, walk, and open a door, button up her clothes and bathe herself. She can hold an object, pinch, and put on her socks and shoes with no problems. She can squat, but said she had problems getting back up. She denied having any surgery or nerve conduction studies done on hands or wrist, but has had steroid injections off and on. She was only taking Tramadol for pain and aches (Exhibit 6F).
>
> In November 2013, Mr. Ehly noted the claimant was a no show on previous referrals to rheumatology. He noted her symptoms were controlled when in adherence with medications, lifestyle changes, diet and exercise plans (Exhibit 10F). In March 2014, Dr. Treadwell noted the claimant reported she lives with her mother, who has dementia. She also stated that her morning stiffness only lasted 30 minutes (Exhibit 12F). The claimant's activities as discussed above are inconsistent with her allegations of debilitating symptoms.

*Id.* The ALJ's analysis is problematic in that it either fails to address or inaccurately represents Claimant's hearing testimony.

In support of her contention that the ALJ erred in the credibility analysis, Claimant cites her testimony that she had well-documented pain in her hands, wrists, and fingers, pain and swelling in her feet, she left her last job due to swelling and "pins and needles" sensation in her feet, she keeps her feet elevated three to four hours a day to alleviate pain and swelling, she has two or three good days a week, but the other days her pain and stiffness is so severe that she cannot use her right hand, she has difficulty grasping and drops objects, she spends two or three days a week in bed because she has so much pain, and she cannot lift more than 10 pounds because of her hands. Pl.'s Mem. [DE-17-1] at 10-11 (citing (R. 34-40)). The ALJ mentions none of this testimony, stating only that Claimant testified she could "cook and clean, vacuum, sit for most of the day, and only had pain two to three days a week." (R. 22). And, the limited testimony directly discussed by the ALJ fails to accurately relate the limitations and abilities asserted by Claimant at the hearing.

For example, Claimant testified that two to three days a week her pain is so severe that she has difficulty getting out of bed, that her daughter does the housework and cleaning when Claimant cannot, and that when she is not in pain she tries to help with the cleaning and cooking. (R. 38-39). She explained that she may have two or three good days when she can vacuum and then the next day she might not be able to use her right hand due to stiffness. (R. 36-37). Claimant also testified that she sometimes has difficulty grasping and would drop things. (R. 37). Claimant did testify that she spends most of the day seated, but also indicated that she sometimes has pain in her lower back when sitting and must lie down with a pillow behind her back for relief, and that she elevates her feet for three or four hours a day to alleviate swelling. (R. 37-38, 41). Claimant's actual testimony regarding her pain, limitations, and abilities is quite different than how it is recounted in the ALJ's decision.

Defendant argues that the objective medical evidence, as summarized by the ALJ, does not

10

support the severity of Claimant's allegations. Def.'s Mem. [DE-19] at 10-12. While the ALJ does summarize the treatment records (R. 20-21) and cites some evidence of record as inconsistent with the alleged severity of Claimant's symptoms (R. 22), the "ALJ's recitation of the objective medical evidence d[oes] not constitute a sufficient credibility analysis under *Mascio*" because the court is "left to speculate as to why the ALJ credited some portions of Plaintiff's testimony, while discrediting other portions." *Perez v. Colvin*, No. 1:13-CV-324, 2015 WL 7302257, at *4-6 (M.D.N.C. Nov. 18, 2015) (unpublished). This is particularly so where the ALJ relies in part on evidence of non-compliance and failure to follow-up with treatment (R. 22), but there is evidence in the record suggesting Claimant could at times not afford medications or treatment and sought care in the emergency room when her joint pain worsened. *Compare* (R. 22) (the ALJ noted that in November 2013, Mr. Ehly, a physician's assistant, reported Claimant was a "no show" for prior rheumatology referrals), *with* (R. 382) (April 25, 2013 treatment note by Mr. Ehly noting Claimant missed appointment and was unable to see rheumatologist due to money) *and* (R. 386) (April 25, 2013 note from Mr. Ehly regarding Claimant stating "Emergency medicaid needed due to multiple medical problems and specialists needed for her care"); *see also* (R. 332-37) (Aug. 9, 2012 – Claimant sought treatment in the emergency department for pain in knees, hands, and feet, it was noted she had been seen in July for same symptoms with no relief, and she was given prednisone and instructed to follow-up with primary care); (R. 424-29) (Sept. 21, 2012 – Claimant sought treatment in the emergency department related to joint pain, was given prednisone, and directed to follow-up with primary care); (R. 419-23) (Oct. 18, 2012 – Claimant sought treatment in the emergency department related to arthritis pain, was given Toradol, prednisone, and a prescription for Lortab, and it was noted that she comes in for the same issue because she has no money or insurance); (R.

11

387) (November 28, 2012 note from Mr. Ehly stating Claimant has not been able to work since August 1, 2012 due to arthritis pain); (R. 371-72) (Jan. 15, 2013 – Dr. Patrone noted rheumatoid arthritis diagnosis with some positive examination findings and that Claimant was self-pay and had no insurance); (R. 409-13) (Jan. 18, 2014 – Claimant sought treatment in the emergency department for multiple joint pain with some positive examination findings); (R. 436-40) (Mar. 7, 2014 – Claimant underwent rheumatological consultation with Dr. Treadwell for diffuse joint pain in her hands, wrists, ankles, and feet, with some positive examination findings, and for which Dr. Treadwell recommended prednisone and methotrexate, noted that Claimant's finances would be a problem, and Claimant reported not having money for follow-up visits with Dr. Patrone or medication). Accordingly, although the ALJ cited Claimant's non-compliance in finding her not credible, it is unclear if the ALJ considered whether Claimant's documented inability to afford specialty care and medications justified her non-compliance. *See Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.").

In sum, the ALJ's "selective recitation" of Claimant's testimony calls into question whether the ALJ fully considered the hearing testimony, *Perez*, 2015 WL 7302257, at \*4, and fails to demonstrate "how he decided which of [claimant's] statements to believe and which to discredit." *Mascio*, 780 F.3d at 640. The court may not substitute its own judgment in this regard and expresses no view on Claimant's credibility. *See Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at \*4 (4th Cir. Dec. 17, 2015) (unpublished) (per curiam) (finding error where the magistrate judge recognized the ALJ's failure to provide sufficient reasoning, yet still engaged in a fact-finding expedition). Accordingly, it is recommended that the case be remanded for the ALJ to fully consider Claimant's

12

testimony at the administrative hearing and to explain "how he decided which of [claimant's] statements to believe and which to discredit" as required by *Mascio*, 780 F.3d at 640. Because a claimant's testimony and the ALJ's credibility assessment thereof are integral to the RFC determination, the ALJ should revisit Claimant's RFC, as necessary, after conducting a thorough credibility analysis.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-17] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-18] be DENIED, and the matter be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 5, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and**

13

Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, this the **20** day of June 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

14